FILED

2022 Jul-12  PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DEBRA ANGLIN,                    )
                                 )
            Plaintiff,           )
                                 )
    vs.                          )          Case No. 4:20-cv-01858-LSC
                                 )
Kilolo Kijakazi, Commissioner of )
The SOCIAL SECURITY              )
ADMINISTRATION,                  )
                                 )
            Defendant.           )

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Debra Anglin ("Anglin" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for period disability and Disability Insurance Benefits ("DIB") on December 11, 2019. Anglin timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Anglin was 62 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 128-29, 251.) Her past work experience includes employment as a bank/loan officer; assistant branch

manager, financial; and branch manager, financial. (Tr. at 129-35, 251.) Anglin claims that she was disabled due to severe depression and bipolar disorder. (Tr. 250.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d

1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. (*Id.*)

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If

the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Anglin meets the insured status requirements of the Social Security Act ("SSA") through December 31, 2022. (Tr. at 15.) The ALJ further determined that Anglin has not engaged in SGA since February 15, 2018, her alleged onset date. (*Id.*) According to the ALJ, the plaintiff had the following non-severe medically determinable impairments: hypertension, diabetes mellitus, obesity, and gastroesophageal reflux disease ("GERD"). (*Id.*) However, the ALJ also found that Anglin had a severe impairment of bipolar disorder. (*Id.*) But the ALJ found that Plaintiff's severe impairment neither met nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 16.) The ALJ ultimately did not find Anglin's allegations to be totally credible, and the ALJ determined that Anglin has the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple and detailed, but not complex tasks. She can maintain concentration, persistence, and pace for such tasks with customary breaks spread throughout the day. She can interact appropriately with the public, supervisors, and coworkers. She can adapt to occasional changes in the workplace.

(Tr. at 18.)

According to the ALJ, Anglin is unable to perform any of her past relevant work. (Tr. at 21.) The ALJ determined that Anglin was 61 years old, which is defined as "an individual closely approaching retirement age," on the alleged disability onset date. (*Id.*) *See* 20 C.F.R. §§ 404.1563. The ALJ established that Anglin has at least a high school education and is able to communicate in English. (Tr. at 22.) Further, the ALJ found that Anglin has acquired work skills from her past relevant work which was "skilled with specific vocational preparation ("SVP") codes of 7-8 and required the following skills: clerical skills such as using bank, office, and computer equipment," in additional to certain organization and computational skills that would transfer to other occupations. (*Id.*) The ALJ found that Anglin "could perform other work existing in significant numbers in the national economy" based on the testimony from the vocational expert ("VE"). (*Id.*) The VE stated that "an individual with Plaintiff's vocational factors and RFC could perform the representative occupations of currency counter, loan computation clerk, and funds transfer clerk." (Tr. at 22-23, 144-46.)

Therefore, the ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 15, 2018, through the date of this decision." (Tr. at 23.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Anglin argues that this case should be remanded because the ALJ erred in holding that Plaintiff's daily activities diminish the persuasiveness of her allegations. (Doc. 8 at 10-12.) Plaintiff's argument fails because the substantial evidence supports the ALJ's conclusion that Plaintiff's daily activities are consistent with other evidence of the record that does not support Plaintiff's subjective complaints. (Tr. at 16-21.)

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the

presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when Plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225-26. In evaluating the extent to which the plaintiff's symptoms, such as pain, affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's

statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416. 929(c)(3), (4); SSR 16-3p.

In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561). A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit "will not disturb a clearly articulated finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Foote*, 67 F.3d at 1562). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the Plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 Fed. App'x 935, 939 (11th Cir. 2011).

In this case, the ALJ determined that Anglin's bipolar disorder qualified as a severe impairment and non-severe medically determinable impairments of hypertension, diabetes mellitus, obesity, and GERD. (Tr. at 15-16.) The ALJ also determined that Plaintiff's medically determinable impairment could reasonably be expected to cause the symptoms she alleged. (Tr. at 18.) However, the ALJ also found that the plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) Substantial evidence supports the ALJ's conclusion.

The ALJ concluded that Anglin's medical evidence fails to provide substantial support for her subjective allegations of her disabling symptoms and limitations. (*See* Tr. at 18-19, 324-62, 366-96, 397-401, 503-505, 531-536.) Moreover, the ALJ determined that the medical findings fail to support the existence of limitations that are greater than the established RFC. (Tr. at 18.) Plaintiff attended routine medical follow-ups on several occasions that provide substantial evidence to support the ALJ's conclusion. (*See e.g.*, Tr. at 324-62, 366-96.) In March 2018, Anglin was "clear and not manic," denied any new or major psychological stressors, reported satisfactory sleep, appeared improved, and even reported that she was doing better since her last visit. (Tr. at 324-25.) In May 2018, Anglin's treatment notes reflect

10

that her mood was "much improved." (Tr. at 398-401.) Furthermore, she was cooperative and well-groomed, her insight and judgment were noted as "good," she said she felt good, and she was not manic or depressed. (Tr. at 398-401, 533, 541.) In August 2018, Anglin reported that her mood had been stable, that she had been sleeping well, that she was able to leave her house on her own, and that the medication helped her quality of life. (Tr. at 504, 531-32.) In November 2018, Anglin complained that she didn't "have a whole lot of get up & go," but treatment notes indicate that a discussion of her complaint led the Ann Crouch, C.R.N.P, to conclude that the issue was due to a decrease in her manic symptoms and that Anglin was doing well otherwise. (Tr. at 537-38.) In February of 2019, Anglin's treatment notes indicate that she was "Doing well!" (Tr. 601-602.) They also show that her mood was stable and good with no depression or mania and that she wanted to keep her medication regimen in place. (*Id.*) In August 2019, Anglin was again noted as doing well with a stable mood and no anxiety, and she expressed a desire to continue with her medication. (Tr. 605-606.) The notes also show that she "[h]ad a good summer" and was "[p]lanning [a] trip to [the] mountains." (*Id.*) The ALJ consistently found that the medical evidence supported the finding that Plaintiff's allegations were not fully consistent with the objective evidence. (Tr. at 19.)

At the hearing, Plaintiff explained to the ALJ that her reason for leaving her position with the bank after 38 years was additional goals set by her company that left her "totally overwhelmed" and feeling like she could "no long do [her] job the way it need[ed] to be done." (Tr. at 135-36.) During follow-up questioning, she attributed this sense of "mental overload" to "mental issues" that she has dealt with throughout her life. (Tr. at 137.) Anglin also testified that her mental functioning had not improved since that time, even though she was not working. (Tr. 137-38.) She also stated that the medication she was taking at the time of the hearing "sort of stabilizes," but she still has days were she "can't get up and function," which she attributes to depression and not having "the desire or the want to or [she] can't do it." (Tr. at 138-39.)

Plaintiff alleged that even with medication, she was not able to function. (Tr. at 18, 139.) The record, however, provides substantial evidence that Plaintiff's medications have been relatively effective in controlling Plaintiff's symptoms. (Tr. at 20, 324, 326, 328, 330, 332, 334, 336, 338, 340, 342, 344, 346, 349, 351, 353, 504, 531.) In August 2018, Plaintiff admitted that her current medication regimen was controlling her symptoms and does allow her "some quality of life." (Tr. at 18, 504, 531.)

The ALJ also highlighted other inconsistent statements regarding matters relevant to disability. (Tr. at 20.) Anglin stated that she stopped working "due to difficulty remembering the process of her work duties." (Tr. at 18, 151-52.) However, her husband stated that she does have the ability to complete tasks, such as cleaning the house and preparing meals. (Tr. at 20, 256-63.) Although there are treatment notes that report breakdowns in Plaintiff's previous job (Tr. at 400), subsequent treatment notes that indicate Anglin's mood has improved, with Anglin denying depression or manic symptoms. (Tr. at 20, 398, 601-02, 605-06.) Thus, Plaintiff's subjective complaints and alleged functional limitations are diminished by the discrepancies in Plaintiff's testimony and the evidence in the record.

In addition to Plaintiff's subjective complaints, the ALJ also considered the state agency opinion, which she found to be partially persuasive. (Tr. at 20.) Doctor Peter Sims ("Sims"), M.D., providing the state agency assessment, observed Plaintiff's written records but did not examine her. (Tr. at 20, 153-156.) In contrast to Plaintiff's testimony, Dr. Sims opined that her bipolar disorder would cause mild impairment of her ability to understand remember, or apply information and interact with others, and it would create moderate impairment of her ability to concentrate, persist, or maintain pace and adapt or manage herself. (Tr. 153-156.) Dr. Sims also determined that Plaintiff would have no impairment of her general intelligence or

specific learning skills." (*Id.*) He ultimately concluded that "the degree of limitations alleged are not consistent with the totality of evidence." (*Id.*) He noted that in her interview, the claims representative did not observe difficulty in understanding or responding to questions. (*Id.*) He also noted that Anglin is able to perform personal care tasks, take medications, drive alone, prepare meals, and maintain a clean house. (*Id.*; Tr. at 264-71, 539.)

The ALJ did not find persuasive Sims's finding that the plaintiff "would require breaks and would miss 1 to 2 days of work per month due to exacerbation of psychiatric symptoms." (Tr. at 20, 156.) The ALJ concluded that Dr. Sims's finding directly conflicts with the mental status examinations of the plaintiff that were found routinely normal and those showing that her mood was "much improved," that her medication was working well, that she reported feeling good, and that she denied mania or depression. (Tr. at 20, 531-38, 601-02, 605-06.) On the other hand, the ALJ did find Sims's opinion "regarding sustaining attention and concentration and [ability to] respond to simple and infrequent changes in work routine" to be consistent with the record. (Tr. at 20, 156.)

In addition to medical records and opinions discussed above, the ALJ also considered Plaintiff's daily activities to reach her conclusion. (Tr. at 16-21). The ALJ properly examined Anglin's activity level given the complaints of disabling

symptoms and limitations. (Tr. at 18-21.) Although not dispositive, a plaintiff's activities may show that their symptoms are not as limiting as alleged. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p, 82 Fed. Reg. at 49,465; *Dyer,* 395 F.3d at 1210; *Macia v. Bowen,* 829 F.2d 1009, 1012 (11th Cir. 1987); *Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1011 (11th Cir. 2016).

Plaintiff argues that the ALJ's use of Plaintiff's daily activities was inappropriate and cites several Eleventh Circuit cases that reversed the ALJ's decision for improper consideration of such evidence. (Doc. 10 at 2-7.) In *Schink,* the Eleventh Circuit found the plaintiff's activities to be mostly solitary and held that those activities "do not discount the treating physicians' opinions that Schink suffered significantly from mental impairments." *Schink v. Comm'r of Soc. Sec.,* 935 F.3d 1245, 1264 (11th Cir. 2019). In contrast, Anglin participates in several social activities on a regular basis, such as talking to her mother and sister daily and visiting them once a week, attending church weekly, going to the grocery store. (Tr. 264-71.) Plaintiff describes no problems getting along with others, though she does not spend as much time around other people as she used to. (Tr. 264-71.) More significantly, in contrast to *Schink*, the evidence of daily activities is consistent with the medical evidence cited by the ALJ. Rather than using the activities of daily living to discount

medical opinions, the ALJ saw Plaintiff's daily activities as additional evidence that supported the medical records.

Plaintiff also refers the Court to *Early v. Astrue*, 481 F.Supp.2d 1233 (N.D. Ala. 2007). (Doc. 8 at 11.) In *Early,* the court recognized that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." 481 F.Supp.2d 1233, 1239 (N.D. Ala. 2007) (quoting *Smith v. Califano*, 637 F.2d 968, 971-72 (3rd Cir. 1981)). The court added, "The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain." *Id.* at 1238. In that case, the ALJ used plaintiff's activities of doing housework and yardwork, caring for animals, grocery shopping, and occasional fishing trips to discredit the plaintiff's subjective pain testimony. *Id.* at 1238. However, the court determined that the ALJ's conclusion was improper because it was not supported by substantial evidence, citing the fact that the medical records substantiated her receiving treatment and taking medication for depression. *Id.* at 1239. Again, in contrast to *Early*, the ALJ properly considered Plaintiff's daily activities alongside additional medical evidence, as well as statements from the plaintiff about how her medication was working, the nature of her symptoms, and inconsistencies in Plaintiff's statements. The ALJ did not ignore the other evidence but instead considered it all and concluded that while Plaintiff's condition does

create some limitations, she "retains the capacity to function adequately to perform many basic activities associated with work." (Tr. at 21.)

Finally, Plaintiff argues that *Love v. Colvin* stands for the proposition that the plaintiff's daily activities did not discredit her testimony. (Doc. 8 at 11.) The court noted that even though the plaintiff was able to perform certain activities, such as driving a vehicle, performing housework, or preparing meals, "her day-to-day life is strongly limited by her inability to stand, sit, or walk for extended periods." *Love v. Colvin*, No. 6:15-CV-338-WMA, 2016 WL 741974, at *5-*6 (N.D. Ala. Feb. 24, 2016). Here, the ALJ found that Anglin's daily activities are inconsistent with her subjective allegations, but they are consistent with other evidence in the record and the ALJ's ultimate determination that allowing for some nonexertional limitations, the Plaintiff had the RFC to perform the full range of work at all exertional levels. (Tr. at 18-21.)

While the ALJ recognizes that Anglin's bipolar disorder does cause her some limitations, the totality of the evidence fails to support Anglin's claim of total disability. The RFC finding from the ALJ presents limitations but also demonstrates Plaintiff's capability of performing many basic activities that are associated with work. (*Id.*) The ALJ acknowledged that Plaintiff is unable to perform any of her past relevant work but determined that she ultimately retains the ability to transfer her

learned work skills to "jobs existing in significant numbers in the national economy." (Tr. at 22.) So, while Plaintiff argues that the ALJ erred in holding that her daily activities diminish the persuasiveness of her allegations, it is clear that Plaintiff's daily activities were not the sole consideration. (Tr. at 16-21.) The ALJ properly considered Plaintiff's activities but also thoroughly evaluated Anglin's subjective allegations along with other objective evidence from the record, and substantial evidence supports her decision.

## IV. Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON JULY 12, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
206728